IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT FACEBOOK.COM/DARCMINDED, THE FACEBOOK ACCOUNT ASSOCIATED WITH MONTRELL FRANKLIN, THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 1:20-mj- 109<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Chris Moon, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives,
being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for
information associated with a certain Facebook user ID: facebook.com/DarcMinded (hereinafter
referred to as the "Target Account") that is stored at premises owned, maintained, controlled, or
operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo
Park, California.  The information to be searched is described in the following paragraphs and in
Attachment A.  This affidavit is made in support of an application for a search warrant under 18
U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the
government records and other information in its possession, pertaining to the subscriber or
customer associated with the user ID.

2.      I, Chris Moon, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms,
and Explosives (ATF), and have been so employed since July 2015. In addition to my employment
with ATF, I have over 3 years of law enforcement experience with the University of Georgia Police

Department and 11 years of law enforcement experience with the Conyers Police Department (CPD). I spent a total of 5 years working as a uniform patrol officer between the two police departments and 9 years working criminal investigations with the Conyers Police Department. I am a graduate of the North East Georgia Police Academy with the Georgia Police Officers Standards and Training Council Basic Mandate certificate, the Federal Law Enforcement Training Center Criminal Investigator Training Program (CITP), and the ATF Special Agent Basic Training (SABT) Program. I have received specialized training with respect to narcotics and firearms violations and have been involved in numerous investigations involving violent crimes and the seizure of firearms and controlled substances. I also have a Bachelor of Arts in History from Emory University, and a Master of Science in Public Safety Administration from Columbus State University.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience, your affiant knows gang members frequently use Facebook and other social media to brag about criminal activity, threaten or taunt members of rival gangs, coordinate the purchase and sales of narcotics and firearms, and intimidate witnesses and the general public. Additionally, gang members frequently post photographs, videos, and Status Updates on Facebook to show off their gang affiliation by displaying gang signs, colors or flags, and using or excluding certain letters in their Status Updates. Your affiant also knows that gang members frequently use Facebook and other social media as means of recruitment for their gang and to announce their "ownership" of a geographic territory.

5.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 1959 and Title 18 U.S.C. § 922(g)(1), have been committed by Montrell FRANKLIN (hereinafter FRANKLIN), and others known and unknown.    There is also probable cause to search the information described in Attachment A for evidence of these as described in Attachment B.

6.    The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.    Your Affiant is currently participating in an investigation of the multiple violent crimes suspected to have been committed by members and associates of the Rollin 40 Crips street gang in Chattanooga, Tennessee.  Your affiant, as well as other law enforcement officers assisting with this investigation, have conducted interviews, executed search warrants, and executed arrest warrants that have led to seizures of firearms in Chattanooga and Knoxville, Tennessee.  Through the aforementioned activities, as well as through undercover Facebook activity, FRANKLIN has been identified and subsequently arrested for the Murder of Robert DOWDY and the Aggravated Assault of Brandon RAKESTRAW that took place on June 22, 2020.  FRANKLIN is a validated member of the Rollin 40 Crips and a previously convicted felon.  Furthermore, FRANKLIN has been identified as using the Facebook account facebook.com/DarcMinded to post photographs of himself with what appear to be semi-automatic firearms and make Facebook Live videos showing himself and others with firearms minutes before shootings.

8.     On May 31, 2020 at approximately 8:16 PM, CPD personnel responded to a Person Shot call at 2000 Sherman Street (CPD Incident # 20-053174).   CPD located Kahlil STRICKLAND (B/M; 01/29/1997; SSN 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; TN DLN 124792533; 2000 Sherman Street, Chattanooga, TN 37406) suffering from multiple gunshot wounds.   STRICKLAND was transported to Erlanger Hospital where he was pronounced deceased.   Witnesses advised that five subjects left the residence just before the shooting, and one of the subjects was paralyzed and had to be carried out by the other subjects.   The witnesses advised that two of the subjects then came back into the house and shot STRICKLAND.   Additionally, a second party was non-fatally shot and transported to the hospital by private car before the police arrived.   The party was identified as Charles MELTON, aka "Spank Loc" (B/M; 10/22/1996; SSN 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; 125012264; 4309 Shawnee Trail, Chattanooga, TN 37411).   MELTON is a validated member of the Rollin 30 Crips.

9.     CPD obtained information that the paralyzed party was Tremaine DILLARD, aka "West Bangin" (B/M; 03/28/1998; SSN 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; TN DLN 130595049; 1101 Arlington Ave, Apt 6, Chattanooga, TN 37406).   DILLARD was previously shot and frequently uses a wheelchair to move around.   DILLARD does have some, but very limited, use of his legs.   DILLARD is a validated member of the Rollin 40 Crips and a previously convicted felon.   CPD received information from an unknown source that DILLARD, FRANKLIN, and FRANKLIN's brother, Demonte CRAYTON, aka "Young Avenue" (B/M; 07/01/2001; SSN 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; TN DLN 139323157; 1807 Rubio Street, Chattanooga, TN 37406) were at STRICKLAND's residence gambling on a dice game.   STRICKLAND got involved in a dispute with someone in FRANKLIN's party and punched the person.   FRANKLIN's party left the house carrying DILLARD to the vehicle, a dark gray SUV.   CPD's source stated that FRANKLIN and

CRAYTON then came back into the house and shot STRICKLAND. CRAYTON is also a validated member of the Rollin 40 Crips.

10. On June 4, 2020 at approximately 8:26 PM, CPD responded to a Person Shot call at 851 Wheeler Ave (CPD Incident # 20-054612). Officers located Derrick MCKINNEY, aka "Donkey" (B/M; 12/11/1990; SSN 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; TN DLN 111176779; 283 W. 38th Street, Chattanooga, TN 37410) in the front yard with multiple gunshot wounds to his abdomen. CPD located Montrel WILSON (B/M; 05/26/1990; SSN 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; TN DLN 111032823; 806 Hooker Road, Chattanooga 37410) inside the residence with gunshot wounds to his hip. MCKINNEY was pronounced deceased and WILSON was treated at Erlanger Hospital. CPD located 7.62 caliber shell casings from the street. The CPD RTIC cameras captured a black Nissan sedan committing the drive-by shooting. No motives were provided by witnesses. MCKINNEY was a validated member of the Bounty Hunter Bloods street gang.

11. On June 6, 2020 at approximately 3:35 PM, Chattanooga Police responded to a Person Shot call at 273 Water Street, Chattanooga, TN 37411 (CPD Incident # 20-055226). CPD located a male and a female juveniles suffering from non-fatal gunshot wounds. Witnesses advised that a silver SUV drove by a group of teenagers standing in front of 273 Water Street and opened fire. The witnesses advised that the vehicle was occupied by three black males. CPD received information that FRANKLIN and CRAYTON were the suspected shooters.

12. On June 16, 2020, FRANKLIN posted a photo on his Facebook account (facebook.com/DarcMinded with the Vanity Name: Tado Santana) that showed he and CRAYTON on a porch together. FRANKLIN appeared to have a semi-automatic pistol tucked into his waistband with a blue flag wrapped around the grip. CRAYTON had a semi-auto pistol

with a blue flag around the grip at his feet. FRANKLIN had the following caption with the photo "They Hate Me N Bkro Together…We Been Trendin Fuc The Opps #BkluFlagsnSticcs".



13.     On Monday, June 22, 2020, CPD Gang Unit and Gun Team investigators held a meeting about the Rollin 40s. During the meeting FRANKLIN started a Facebook Live video that the investigators recorded. The video was approximately 2 minutes long and it began at 1:57 PM. The video showed FRANKLIN sitting in the front passenger seat of an SUV. The video showed DILLARD driving the vehicle with a pistol in his lap. The driver's side rear passenger was a black

male wearing a green hooded sweatshirt. The video showed him pointing what appeared to be a Glock pistol with a tan slide at the camera. CPD investigators later identified the passenger as Eric SIMS (17 years of age, no other identifiers provided). The video also showed a black male passenger sitting behind FRANKLIN in the video. Sgt May identified that passenger as Tyqurerio MALONE, aka "Ty" (B/M; 06/05/1995; SSN 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; TN DLN 124333920; 2510 Taylor Street, Chattanooga, TN 37406). MALONE is a previously convicted felon and a validated member of the Boone Heights Mafia Crips. The video also showed FRANKLIN with what appeared to be a Ruger pistol in his lap.







14. At the end of the video FRANKLIN stated "Aight, we on business" and the video ended. Within approximately 5 minutes of the video ending a silver Nissan SUV drove down W. 38th Street and shot into a crowd of people standing around Nine Brothers convenience store located at 101 W. 38th Street (CPD Incident # 20-061063). CPD personnel responded to the shooting and located Robert DOWDY (B/M; 05/12/1989; TN DLN 107638601; 4113 Hooker Rd, Chattanooga, TN 37410) with a gunshot wound to his torso and Brandon RAKESTRAW, aka "Lil Booty" (B/M; 03/05/1996; SSN 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; TN DLN 117973018; 3852 Agawela Dr,

Chattanooga, TN 37406) with a gunshot wound to his leg. DOWDY and RAKESTRAW were transported to Erlanger Hospital for treatment. DOWDY was pronounced deceased at Erlanger Hospital and RAKESTRAW had to undergo emergency surgery for his gunshot wound.

15. The CPD RTIC cameras captured the shooting on surveillance. The driver's side passenger leaned out of the window and shot over the roof of the SUV at the crowd around Nine Brothers. It also looked like the passenger side occupants fired at the crowd. The suspect shooting over the roof of the vehicle was wearing a green hooded sweatshirt. CPD located 9mm shell casings and a .223 shell casing.

16. The crowd at Nine Brothers consisted mostly of people that had just come from Derrick MCKINNEY's funeral service. MCKINNEY was a validated Bounty Hunter Blood, and RAKESTRAW was also a member of the Bounty Hunter Bloods. DOWDY was not on found on the CPD Gang Validation List. Additionally, CPD Sgt. Josh May advised that Antonio EVANS, aka "Tony Ru" (B/M; 01/13/1994; SSN 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; TN DLN 121905299; 6065 Arlena Cir., Chattanooga, TN 37412) was on Facebook Live talking about the funeral service and began arguing with FRANKLIN. According to Sgt May, during the video EVANS told FRANKLIN that people were at Nine Brothers for MCKINNEY's funeral, and FRANKLIN stated that he was on the way. EVANS is a validated member of Skyline Piru.

**FACEBOOK, INC.**

17. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

18.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

19.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

20.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook. Depending on the user's privacy settings, Facebook may also obtain and store the physical location of the user's device(s) as they interact with the Facebook service on those device(s).

21.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

22.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

23.     Facebook users can exchange private messages on Facebook with other users using Facebook Messenger. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

24.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

25.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

26.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

27.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

28.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

29.     Facebook users can exchange private messages on Facebook Messenger with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. There is also a separate application, Facebook Messenger, where users can send and receive private and group messages. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in

the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

30.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

31.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

32.     Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

33.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings;

rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

34.    In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

35.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

36.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

37.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal

conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the IP addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

38.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, other account information and prospective location information.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

39.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### CONCLUSION

40.    Based on the foregoing, I request that the Court issue the proposed search warrant.

41.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

42.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

### REQUEST FOR SEALING

43.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These

documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Chris Moon
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Subscribed and sworn to before me on _August 17_, 2020

HON. SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT FACEBOOK.COM/DARCMINDED, THE FACEBOOK ACCOUNT ASSOCIATED WITH MONTRELL FRANKLIN, THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 1:20-mj- 109 <br><br> **Filed Under Seal** |

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user facebook.com/DarcMinded; that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT FACEBOOK.COM/DARCMINDED, THE FACEBOOK ACCOUNT ASSOCIATED WITH MONTRELL FRANKLIN, THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 1:20-mj- 109<br><br>**Filed Under Seal** |

## ATTACHMENT B

**Particular Things to be Seized**

## I.     Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), for the period of March 26, 2020 to Present, Facebook is required to disclose the following information to the government for each of the Facebook accounts described in Attachment A:

(a)     All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)     All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins," location history, and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All past and present lists of friends created by the account;

(i)     All records of Facebook searches performed by the account;

(j)     All information about the user's access and use of Facebook Marketplace;

(k)     The types of service utilized by the user, the length of service (including start date), the types of service utilized by the user, and the means and source of any payments associated with the service (including any credit card or bank account number);

(l)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18 U.S.C.§ 1959 and Title 18 U.S.C.§ 922(g)(1) involving FRANKLIN, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The sale, possession and transfer of firearms and ammunition and other steps taken in furtherance of FRANKLIN's involvement in a conspiracy to possess, use, purchase, or sell firearms or ammunition in violation of the Federal Gun Control Act and 18 U.S.C. 1959.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(d) The identity of the person(s) who communicated with the user ID about matters relating to violations of Title 18 U.S.C.§ 1959 and Title 18 U.S.C.§ 922(g)(1), including records that help reveal their whereabouts.